In the Matter of the ADOPTION OF R.R.R. minor child.

L.R.R., Appellant,

v.

R.D.R., Appellee.

No. 66030.

Supreme Court of Oklahoma.

Oct. 11, 1988.

As Corrected Oct. 17, 1988.

Annette H. Prince, Oklahoma City, for Appellant,

Terri Coulter, Oklahoma City, for appellee.

KAUGER, Justice.

The only issue presented is whether a child of married parents who are still married may be adopted without their consent

because of their failure to support the child. We find that a child may be adopted without the consent of a married parent under 10 O.S.1981 § 60.6(3)(b),[1] if the parent has wilfully failed, refused, or neglected to contribute to the support of the child for a period of twelve months preceding the filing of the petition for adoption.

## FACTS

On September 12, 1985, the appellant/grandmother, L.R.R., filed a petition to adopt her Indian granddaughter, R.R.R., asserting that parental consent to the adoption was unnecessary because the child's natural parents had wilfully failed, refused, or neglected to contribute to the child's support for more than twelve months preceding the filing of the adoption petition. The grandmother also alleged that the child had been her charge since February 28, 1979, the date the child's parents filed for divorce. The divorce was not finalized and the petition was dismissed on October 29, 1981. However, the child continued to live with her grandmother.

Because the whereabouts of the mother were unknown, notice of the proposed adoption was given by publication—actual notice was given to the father. Although the mother did not respond, the father filed an answer objecting to the adoption and asserted that both he and his daughter had been living with his mother, and that he had supported his daughter in accordance with his means. The father filed a motion for summary judgment on January 9, 1986, alleging that his daughter was ineligible for adoption. The father argued that because he would not consent to the adoption and because he was not a divorced spouse, an adoption could not be obtained under 10 O.S. 1981 § 60.6(3)(b).

After making extensive findings of fact and conclusions of law, the trial court sustained the father's motion for summary judgment. The basis for the court's ruling was that a petition for adoption could not be granted without parental consent unless: (1) the parent's marriage had been judicially dissolved and one or both parents had failed to support the child in accordance with a decree of divorce or other order for support; or (2) there had been a failure to support within a divorced spouse's means even if the divorce decree contained no support provision. The trial court did not reach the questions of whether the father had actually contributed to the support of his child, or whether legal custody of the child was vested in the grandmother. The Court of Appeals affirmed the trial

1. Title 10 O.S.1981 § 60.6 provides:
   "A legitimate child cannot be adopted without the consent of its parents, if living, nor a child born out of wedlock without the consent of its mother, if living, except that consent is not necessary from a father or mother:
   1. Adjudged to be an habitual drunkard; or
   2. Who has been judicially deprived of the custody of the child by any court of competent jurisdiction, including a court which has jurisdiction of a divorce action involving said parent, on account of cruelty to or neglect of the child; or
   3. Who, for a period of twelve (12) months next preceding the filing of a petition for adoption of a child, has wilfully failed, refused or neglected to contribute to the support of such child:
      a. in substantial compliance with a support provision contained in a decree of divorce, or a decree or (sic) separate maintenance or an order adjudicating responsibility to support in a reciprocal enforcement of support proceeding, paternity action, juvenile proceeding, guardianship, or orders of modification subsequent thereto, or other lawful orders of support entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support, or
      b. according to such parent's financial ability to contribute to such child's support if no provision for support is provided in a decree of divorce or an order of modification subsequent thereto;
   and where any of the above conditions exist it shall not be necessary to terminate parental rights under Section 1130 of this title prior to the adoption of said child. Provided that any decree of adoption heretofore entered by any court of appropriate jurisdiction within the State of Oklahoma wherein termination of parental rights, as prescribed in Section 1130 of this title, was not obtained shall not be invalid on the ground that such termination of parental rights was not obtained."
   Section 60.6 was amended effective July 1, 1986; however, the provision pertinent to this appeal, subsection 3(b), remains substantively unchanged except that the statute has been renumbered and subsection 3(b) now appears as subsection 2(b) and the last paragraph of the 1981 statute now appears as part of that subsection.

court on substantially the same basis. However, it also found that the grandmother lacked standing under 10 O.S.Supp.1983 § 60.7[2] to file a petition for adoption under § 60.6.

## I.

### DIVORCE AND JUDICIAL IMPOSITION OF SUPPORT OBLIGATIONS ARE NOT PREREQUISITES TO ADOPTION WITHOUT PARENTAL CONSENT UNDER 10 O.S.1981 § 60.6(3)(b)

■ The novel question presented is whether a child whose parents are married may be adopted without their consent based on their wilful failure, refusal, or neglect in contributing to the support of their minor child in absence of a divorce decree or judicially imposed obligation for support. Although we have not addressed this issue, we have determined that if the parents' marriage has been dissolved and the custody of the child is placed with a single parent, the noncustodial parent is obligated even in absence of court order to provide support.[3] Failure to meet that obligation may result in adoption without the consent of the offending parent.[4]

Here, the grandmother sought to adopt her granddaughter under § 60.6(3)(b), alleging that the father had failed to contribute to the support of the child over a year prior to the filing of the petition for adoption. The father contends that subsection (3)(b) is applicable only where the parents of the child sought to be adopted have been divorced and support has not been ordered by judicial decree. Whether the same rules apply to parents who remain married turns upon a matter of statutory construction and a determination of legislative intent.[5] In order to protect the integrity of the home and the natural bond between parent and child,[6] a strict construc-

---

**2.** Title 10 O.S.Supp.1983 § 60.7 provides:

"Prior to a court hearing on a petition for adoption without the consent of a parent or parents, as provided for in Section 60.6 of this title, the consenting parent, legal guardian, or person having legal custody of the child to be adopted shall file an application stating the reason that the consent of the other parent or parents is not necessary. The application shall be heard by the court and an order entered thereon in which said child is determined to be eligible for adoption pursuant to the provisions of Section 60.6 of this title. Prior to a hearing on the application, notice shall be given the parent whose consent is alleged to be unnecessary. The notice of the application shall contain the name of each child for whom application for adoption is made, the date for hearing on the application, and the reason that said child is eligible for adoption without the consent of said parent. Notice shall be served upon said parent in the same manner as a summons is served in civil cases, not less than ten (10) days prior to the hearing. If said parent resides outside the county, said notice shall be served upon said parent in the same manner as a summons is served in civil cases, not less than fifteen (15) days prior to the hearing. If the location of said parent is not known and this fact is attested to by affidavit of the consenting parent, legal guardian, or person having legal custody of the child, notice by publication shall be given by publishing notice one time in a newspaper qualified as a legal newspaper, pursuant to the laws relating to service of notice by publication, in the county where the petition for adoption is filed. The publication shall not be less than fifteen (15) days prior to the date of the hearing."

**3.** *Matter of the Adoption of J.L.H.,* 737 P.2d 915, 920 (Okla.1987); *Matter of the Adoption of C.M.G.,* 656 P.2d 262, 265 (Okla.1982). See also, *Matthews v. Matthews,* 739 P.2d 1298–99 (Alaska 1987); *Federbush v. Mark Twain Parkway Bank,* 575 S.W.2d 829, 831 (Mo.Ct.App.1978); *Sturdy v. Sturdy,* 67 Ill.App.2d 469, 214 N.E.2d 607, 611 (1966); *Miles v. Miles,* 20 Ill.App.2d 375, 156 N.E.2d 371, 373 (1959).

**4.** *Matter of the Adoption of C.M.G.,* see note 3, supra; *In re Lewis' Adoption,* 380 P.2d 697, 701 (Okla.1963). See also, 12 O.S.1981 § 60.6, note 1, supra.

**5.** *Fuller v. Odom,* 741 P.2d 449, 452 (Okla.1987); *Hess v. Excise Bd. of McCurtain County,* 698 P.2d 930, 932 (Okla.1985); *Oklahoma City News Broadcasters Ass'n, Inc. v. Nigh,* 683 P.2d 72, 75 (Okla.1984); *Walker v. St. Louis–San Francisco Ry. Co.,* 671 P.2d 672–73 (Okla.1983); *Jackson v. Indep. School Dist. No. 16,* 648 P.2d 26, 29 (Okla. 1982); *Grand River Dam Auth. v. State,* 645 P.2d 1011, 1018 (Okla.1982); *Dolese Bros. Co. v. Privett,* 622 P.2d 1080, 1084 (Okla.1981); *Matter of Phillips Petroleum Co.,* 652 P.2d 283, 285 (Okla. 1982); *Becknell v. State Indus. Court,* 512 P.2d 1180, 1183 (Okla.1973); *Territory v. Clark,* 2 Okla. 82, 35 P. 882–83 (1894).

**6.** *Mann v. Garrette,* 556 P.2d 1003, 1006 (Okla. 1976).

tion of adoption statutes is required.[7] The law presumes that consent of a child's natural parents is necessary before an adoption may be effected.[8]

The exceptions to this presumption are found in 10 O.S.1981 § 60.6. Section 60.6 is the only avenue by which adoptions may be obtained without prior consent of the parents where the parental bond has not been previously severed.[9] A nonconsensual adoption may be obtained under § 60.6 in four situations. Subsections (1) and (2) provide that an adoption may be had without parental consent: (1) where the parent has been adjudged a habitual drunkard; or (2) where the parent has been deprived of custody for cruelty or neglect.

The final two situations where parental consent will not be required prior to adoption are found in subsections (3)(a) and (3)(b). Under each of these provisions, parental consent is not necessary prior to entering an adoption decree if the parent has wilfully failed, refused or neglected to contribute to the support of the child for a period of twelve months preceding the filing of the petition for adoption. Under subsection (a), a child may be adopted without parental consent if the parent fails to support the child in substantial compliance with judicially imposed standards. To avoid a nonconsensual adoption under subsection (b), support must be rendered in accordance with the parent's financial ability where the obligation has not been imposed by a divorce decree or a subsequent court-ordered modification.

*In the Matter of the Adoption of C.M.G.*, 656 P.2d 262, 265 (Okla.1982), this Court addressed the obligation of parents to support their children in absence of a divorce decree or other order affirmatively imposing such obligation. In *C.M.G.*, the Court found that a natural parent's support obligation stood imposed by law and was recognized in absence of any court order. In construing § 60.6(3), the Court found its object was to permit adoption without the consent of a parent who wilfully failed to discharge the duty to contribute to the child's support.

The mother who faced the possibility of a nonconsensual adoption in *C.M.G.* was a divorced parent. The father seeks to distinguish the case on that basis contending that because the parents are not divorced, neither *C.M.G.* nor § 60.6(3)(b) are applicable. The argument is based on the fact that § 60.6(3)(b) mentions parents who fail to provide the requisite support where no decree of divorce or modification exists affirmatively imposing the duty. From this language, the father argues that only divorced parents may face the possibility of having their children adopted without prior consent under § 60.6(3).

Nothing in the language in *C.M.G.*, indicates that the Court intended to limit the duty of a noncustodial parent's support of a child to a situation where the natural parents are no longer married. Section 60.6(3)(b) speaks only of the duty to support where the obligation has not been set forth in a decree of divorce, it does not limit application of the section to divorced spouses. *In the Matter of the Adoption of J.L.H.*, 737 P.2d 915, 920 (Okla.1987), we found that 10 O.S.1981 § 60.6(3) required a noncustodial parent to provide support in two situations: (1) according to the terms of a court order or (2) where no order existed, in a manner commensurate with the parent's financial ability. *J.L.H.*, like *C.M.G.*, involved divorced parents; but, neither case indicates that the Court intended that the duty to support shall fall only upon divorced parents.

7. *Matter of Adoption of V.A.J.*, 660 P.2d 139, 141 (Okla.1983); *Matter of Adoption of C.M.G.*, see note 3, supra; *Mann v. Garrette*, see note 6, supra; *In re Adoption of Graves*, 481 P.2d 136, 138 (Okla.1971). See also, *Matter of Adoption of Robin*, 571 P.2d 850, 855 (Okla.1977).

8. *Matter of the Adoption of C.M.G.*, see note 3, supra; *Matter of the Adoption of Darren Todd H.*, 615 P.2d 287, 288 (Okla.1980). See also, 10 O.S.1981 § 60.6, note 1, supra.

9. Title 10 O.S.Supp.1987 § 1130 sets forth the situations where termination of parental rights may be obtained.

Section 60.6(3) is not alone in emphasizing the importance of parental support for offspring. The duty to support one's child exists absent a judicial decree affirmatively imposing the obligation.[10] Although the Legislature has codified the duty in 10 O.S. 1981 § 4,[11] the statute is merely a pronouncement of the legal duty of parents to support and educate their children which applies to both custodial and noncustodial parents.

The duty to support one's minor child is a continuing obligation.[12] Wilfull failure to provide the necessary support can result in the offending parent being subjected to criminal charges. According to 21 O.S. 1981 § 852,[13] "every parent" who wilfully neglects to provide the requisite support is criminally liable. The section does not limit the possibility of being charged with a crime for failure to provide support to either married, divorced, or separated parents.

The enactment of 10 O.S.1981 § 60.6(3), provided for adoption without parental consent of children deprived of support by their natural parents. Nothing in § 60.6(3)(b) indicates that children should be treated differently based on the marital status of their parents. In construing the section, we must be mindful of the problem which the statute was intended to avoid [14]—children denied the right to parental support. Under section 60.6(3)(b) any parent, not under a judicially provided order for support, may have the parental tie severed by adoption if the parent fails to support the child according to the parent's financial ability for a period of twelve months preceding the filing of the adoption petition.

■ If the obligation to support has not been judicially imposed, the obligation may be satisfied by other than cash payments.[15] To avoid an adoption under 10 O.S.1981 § 60.6(3)(b), the parent need only show support contributions commensurate with ability—in any form—towards the child's living expenses; [16] and the adoption will be denied. Gifts comporting with the parent's financial ability are sufficient to discharge

---

10. *Matter of the Adoption of J.L.H.,* see note 3, supra; *Matter of the Adoption of C.M.G.,* see note 3, supra. See also, *Matthews v. Matthews,* see note 3, supra; *Federbush v. Mark Twain Parkway Bank* see note 3, supra; *Sturdy v. Sturdy,* note 3, supra.

11. Title 10 O.S.1981 § 4 provides:
"The parent entitled to the custody of a child must give him support and education suitable to his circumstances. If the support and education which the parent having custody is able to give are inadequate, the other parent must assist to the extent of his or her ability."
Section 4 does not limit the duty to either those parents who remain married or to those parents who have been divorced; somewhat incongrously, this section has been held to have no application in child support proceedings arising out of divorce, annulment, or separate maintenance. See, *Lairmore v. Lairmore,* 617 P.2d 892–93 (Okla.1980); *Brown v. Brown,* 607 P.2d 1358–59 (Okla.1980); *LeCrone v. LeCrone,* 596 P.2d 1262, 1264 (Okla.1979).

12. *Wade v. Wade,* 570 P.2d 337, 339 (Okla.1977).

13. Title 21 O.S.1981 § 852 provides in pertinent part:
"Every parent of any child who willfully omits, without lawful excuse, to perform any duty imposed upon the parent by law to furnish necessary food, clothing, shelter or medical attendance for such child is guilty of a misdemeanor; provided that any person who leaves the state with intent to avoid providing necessary food, clothing, shelter or medical attendance for such child is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the State Penitentiary for a period not exceeding one (1) year...."
Section 852 was amended in 1987; however, the quoted portion of the 1981 version remains substantively unchanged except that the new version is extended to cover not only parents, but legal custodians as well.

14. See, *Matter of Estate of Lahr,* 744 P.2d 1267, 1269 (Okla.1987); *Gilbert Central Corp. v. State,* 716 P.2d 654, 662 (Okla.1986); *AMF Tubescope Co. v. Hatchel,* 547 P.2d 374, 379 (Okla.1976); *Stokes v. State,* 410 P.2d 59, 61 (Okla.1966); *Poafpybitty v. Skelly Oil Co.,* 394 P.2d 515, 519 (Okla.1964); *Indep. School Dist. No. J1–69 v. Indep. School Dist. No. D–45,* 363 P.2d 835, 838 (Okla.1961).

15. *Matter of Adoption of J.L.H.,* see note 3, supra; *Matter of Adoption of V.A.J.,* see note 7, supra; *Matter of Adoption of C.M.G.,* see note 3, supra.

16. *Matter of Adoption of J.L.H.,* see note 3, supra; *Merrell v. Merrell,* 712 P.2d 35, 39 (Okla. 1985); *Matter of Adoption of C.M.G.,* see note 3, supra.

the duty.[17]

## II.

### ON REMAND FOR A NEW TRIAL, THE PARTIES ARE NOT PRECLUDED BY PREVIOUS ACTIONS.

#### A.

█ Because the trial court made no determination concerning whether the father had contributed to the support of his child during the year preceding the filing of the petition, whether the grandmother was vested with legal custody thus qualifying her as a party entitled to petition for adoption,[18] or whether the grandmother stood *in loco parentis* as one who had assumed the status and obligations of a parent without a formal adoption,[19] the case is remanded for further proceedings not inconsistent with this opinion. If the trial court determines that the grandmother should be regarded as a person *in loco parentis* or that she had legal custody then she should be allowed to intervene and assert her justiciable interest in the adoption of the child.[20]

#### B.

█ In compliance with the Oklahoma Indian Child Welfare Act, 10 O.S.Supp.1982 § 40.4,[21] the Kiowa Tribal Office and the

---

17. *Matter of Adoption of J.L.H.*, see note 3, supra; *Matter of Adoption of V.A.J.*, see note 7, supra.

18. Title 10 O.S.Supp.1983 § 60.7, see note 2, supra. The dissent argues that the grandmother is not a proper party because she lacks standing to bring the present action. The trial court did not determine whether the grandmother in this instance did in fact have legal custody or that she stood *in loco parentis* despite the fact that in her petition for adoption, the grandmother alleged that she had had the care, custody and control of the child since the child was one year old. This issue was not raised in the petition in error and generally issues not properly raised in the petition in error will not be addressed on appeal. See, *American Body & Trailer, Inc. v. Boyd*, 423 P.2d 1020, 1023 (Okla.1967) and *In re Pulliam*, 369 P.2d 646, 650 (Okla.1962). It should also be noted that *Davis v. Davis*, 708 P.2d 1102 (Okla.1985), cited by the dissent, was overruled with the Legislature's amendment of 10 O.S.Supp.1987 § 1130, providing that not only the State has the right to petition to terminate parental rights where any of the statutorily enumerated grounds exist, but that the right extends to parents and guardians as well.
The dissents have missed the focus of the only issue preserved on appeal: whether a child whose parents are not divorced may be adopted without their consent based on their wilful failure, refusal, or neglect in contributing to the support of their minor child. The question of what constitutes a wilful failure to contribute has been answered since 1983 when the Court decided *Matter of Adoption of V.A.J.*, see note 7, supra. (The father was a prisoner serving a life sentence and his support contributions were non-monetary gifts he made). *Matter of Adoption of J.L.H.*, see note 3, supra. (The mother was a public charge of the state and sent modest gifts to her children. The Court held that a parent who is financially unable to provide for the support of his/her child and who has not voluntarily placed himself/herself in a disabling position to avoid legal responsibility is not within the class of persons whose power to consent is judicially extinguishable.)

19. Many jurisdictions have found that foster parents/grandparents have standing to intervene in adoption proceedings and the United States Supreme Court held in *Smith v. Organization of Foster Families*, 431 U.S. 816, 842, 97 S.Ct. 2094, 2108, 53 L.Ed.2d 14, 33 (1977), that not only do foster parents have standing to assert the claim they have a constitutionally protected liberty interest in the integrity of the family unit. *In Matter of B.C.*, 749 P.2d 542, 545 (Okla.1988), this Court held that one who has cared for and treated a child as a member of the family is without a doubt a person *in loco parentis*. A person *in loco parentis* has standing to intervene and to assert a justiciable interest in an adoption case. See also, *Workman v. Workman*, 498 P.2d 1384, 1386 (Okla.1972) (defined *in loco parentis*). The Texas Court of Civil Appeals in *Trotter v. Pollan*, 311 S.W.2d 723, 729 (Tex.Civ.App.1958), found that when the third persons voluntarily assumed responsibility for the child's care and maintenance and treated the child as their own, these third persons were foster parents, and stood *in loco parentis*. It further held that a person *in loco parentis* had a justiciable interest in the controversy involving the custody of the child.

20. *Matter of B.C.*, see note 19, supra.

21. Title 10 O.S.Supp.1982 § 40.4 provides:
"In any involuntary Indian child custody proceeding of the Oklahoma Indian Child Welfare Act, including review hearings, the court shall send notice to the parents or to the Indian custodians, if any, to the tribe that may be the tribe of the Indian child, and to the appropriate Bureau of Indian Affairs area office, by registered mail return receipt requested. The notice shall be written in clear and understandable language and include the following information:

area office of the Bureau of Indian Affairs were notified. The Kiowa Tribe filed a motion to intervene, but it did not request removal to a tribal court nor did it participate in any subsequent proceedings. (Neither the Tribe nor the Bureau of Indian Affairs were given notice of the November 1, 1985, hearing. This would invalidate those proceedings in so far as the Tribe's interest is concerned.) [22]

■■■ The policy under the Oklahoma Indian Child Welfare Act, 10 O.S.Supp.1982 § 40.1, is to fully cooperate with Indian tribes in order to ensure that provisions of the Federal Indian Child Welfare Act, 25 U.S.C. § 1901, are enforced. Intervention alone is insufficient to cause removal of a proceeding concerning an Indian child to tribal court. Filing of a notice of intervention by a tribe indicates that the tribal authorities may be considering the possibility of removal to an Indian tribunal. However, before removal may be effected under the Federal Act, the extraterritorial jurisdiction of the tribe must be adjudicated. The burden rests upon the State to show good cause why the proceeding should not be transferred to the tribal court. [23] The tribe intervened without requesting removal. The Tribe is entitled to the same protection as the parties. [24] When an entirely new trial becomes necessary, the parties are not precluded by previous actions. [25] The fact that the Tribe was not given notice is moot insofar as this action is concerned because it is to be remanded.

CERTIORARI GRANTED; OPINION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE TRIAL COURT REVERSED AND REMANDED.

DOOLIN, C.J., and HODGES, LAVENDER, OPALA, and ALMA WILSON, JJ., concur.

HARGRAVE V.C.J., and SIMMS and SUMMERS, JJ., dissent.

SUMMERS, Justice, dissenting:

I respectfully dissent. My reading of 10 O.S.1981 § 60.6 would permit adoption without parental consent from a parent (1) adjudged a drunkard, (2) judicially deprived of custody for cruelty or neglect, or (3) who wilfully failed to contribute to the child's support for 12 months either [a] in substan-

---

1. The name and tribal affiliation of the Indian child;
2. A copy of the petition by which the proceeding was initiated;
3. A statement of the rights of the biological parents or Indian custodians, and the Indian tribe:
   a. to intervene in the proceeding,
   b. to petition the court to transfer the proceeding to the tribal court of the Indian child, and
   c. to request an additional twenty (20) days from receipt of notice to prepare for the proceeding; further extensions of time may be granted with court approval;
4. A statement of the potential legal consequences of an adjudication on the future custodial rights of the parents or Indian custodians;
5. A statement that if the parents or Indian custodians are unable to afford counsel, counsel will be appointed to represent them; and
6. A statement that tribal officials should keep confidential the information contained in the notice."

22. The following notation, signed by the trial judge, is found in the record:
"Ent: Petitioner and father appeared for hearing by attys.; Kiowa Tribe of Okla. not present—no notice of this hearing; Court de-termined matter not at issue; father granted 20 days to file pleading, petitioner granted 20 days to respond; set for further hearing at 10 AM, Nov. 18, 1985;"

23. Title 25 U.S.C. § 1911(b) (1978) provides:
"In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe. *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe."
See also, *Matter of N.L.*, 754 P.2d 863, 869 (Okla. 1988); *In the Matter of G.L.O.C.*, 205 Mont. 352, 668 P.2d 235, 237 (1983); *In the Matter of M.E.M.*, 195 Mont. 329, 635 P.2d 1313, 1317 (1981).

24. *Gettler v. Cities Serv. Co.*, 739 P.2d 515, 518 (Okla.1987); *Tulsa Rock Co. v. Williams*, 640 P.2d 530, 532 (Okla.1982). See also, *Teleco, Inc. v. Corp. Comm'n*, 649 P.2d 772–73 (Okla.1982).

25. *Seymour v. Swart*, 695 P.2d 509, 513, 48 A.L.R. 4th 739, 746 (Okla.1985).

tial compliance with a court's decree or order, or [b] according to the parent's ability if such courts' decree or order did not require payment of support. In other words, I believe subsection 3 of the act is only engaged when there is some sort of court order for divorce, separate maintenance, paternity, or the like, and the act then goes on to provide the rules, in [a] when the order requires support, and in [b] when the order does not. Under the majority's interpretation any non-divorced parent lulled into non-support for a period of 12 months stands to lose his or her child to the person doing the lulling, and I do not believe that to be wise law nor consistent with legislative intent.

I am authorized to state that HARGRAVE, V.C.J., shares these views.

SIMMS, Justice, dissenting:

I respectfully dissent. Today the majority holds that a legitimate child may be adopted by a third party without the consent of its parents whose parental rights have never been terminated. That question is not novel, but the answer is.

The majority frames the question as being simply whether 10 O.S.1981, § 60.6(3)(b) is applicable to married as well as divorced parents. In doing so, however, the majority overlooks the critical point that this grandmother is not a proper party to bring this action against the parents regardless of whether they are married or divorced. The nonconsensual adoption procedure provided by § 60.6(3)(b) and § 60.7 is intended to be a private remedy between parents. The procedure provides a means to effect an adoption of a child with the consent of his or her custodial parent. The child is adopted into its existing family unit; the consenting parent and his or her new spouse, the child's step-parent, without the consent of the other parent.

This "private interparental litigation",[1] does not provide a way for the world at large to bring an action to adopt a child without the consent of its parent, however. The Court of Appeals was correct in holding that the grandmother was not a person authorized under § 60.7 to bring the action. Her application stated merely that she was the paternal grandmother and that consent of neither parent was necessary because each had wilfully failed to support the child for the preceding year. The application was not executed by a "consenting parent" nor did the grandmother show that she was the "legal guardian or person having legal custody." The Court of Appeals correctly noted that "legal" custody in the statute means statutorily or judicially vested custody. That court also correctly assessed that it is this absence of such legal custody which distinguishes this situation from *Matter of Adoption of C.M.G.*, Okl. 656 P.2d 262 (1982). There the parents of the child to be adopted were divorced and custody had been judicially vested in the petitioning aunt and uncle, along with the right to support payments.

The grandmother here has no legal right to this child. She is not the legal custodian or guardian and she has no adjudicated right to receive support. She has no standing under § 60.7 simply by reason of her status as a grandparent. See also, *Matter of Adoption of G.D.L.*, Okl., 747 P.2d 282 (1987). The parents' status has never been judicially altered and all rights remain vested in them. The parents have not consented to the adoption. Clearly under the provisions of § 60.6 and § 60.7, this was not a child eligible for adoption nor was this petitioner eligible to adopt. The trial court correctly held in favor of the natural father. *State, ex rel., Dept. of Inst., Soc. & R. Serv. v. Griffis*, Okl., 545 P.2d 763 (1976).

The fact that § 60.6 is not applicable to this situation does not mean that this grandmother is powerless to seek relief. She can properly proceed under other statutes designed to furnish remedies to those in her situation. She could, for instance, maintain an action for necessaries furnished the child pursuant to 10 O.S.1981, § 13. As the majority points out, there are criminal sanctions under 21 O.S.1981, § 852 which she could seek to have enforced.

1. *Davis v. Davis*, Okl., 708 P.2d 1102, 1112     (1985).

Pursuant to 30 O.S.1981, §§ 1, et seq., she could bring an action to have herself appointed the child's guardian. She could also pursue efforts to obtain lawful custody, and even ultimately an adoption, by bringing the alleged parental nonsupport and abandonment of this child to the attention of her local district attorney for proceedings under the Juvenile Code, 10 O.S. 1981, §§ 1101, et seq. She could properly seek custody through the Juvenile Court and possibly termination of their parental rights, clearing the way for her to adopt the child.

We have repeatedly recognized that the right of a parent to the care, custody, control and management of his or her child is a fundamental right protected by the federal and state constitutions and that before a parent may be deprived of that right, he or she must be accorded the full panoply of procedural and substantive safeguards associated with protection of fundamental constitutional rights. We have also held beyond the need for multiple citations that adoption statutes are in derogation of the rights of parents and must be strictly construed. Also that the law presumes the necessity of consent of the natural parent before an adoption may be effected, and that the burden rests on the party seeking to destroy that bond to show why parental consent is not necessary.

Clearly that burden has not been met here. I would deny certiorari to the Court of Appeals and affirm the trial court. I am authorized to state that Vice Chief Justice Hargrave joins with the views expressed in this dissenting opinion.