951 P.2d 83 (1997)
1997 OK 148
In the Matter of the ADOPTION OF R.W.S., a minor child.
Ricky Earl COMBS and Sandra Faye Combs, Appellants,
v.
Johnny Ray SUTTON, Appellee. and
In the Matter of the GUARDIANSHIP OF R.W.S., a minor child.
Jennifer SUTTON, Plaintiff,
v.
Johnny SUTTON, Defendant,
Ricky Earl COMBS and Sandra Faye Combs, Appellants,
v.
Jennifer SUTTON, Johnny Sutton, Jerry Sutton, Sharon Sanders, Dennis Lamecker and Dorothy Lamecker, Appellees.
Nos. 86122, 88053.
Supreme Court of Oklahoma.
December 9, 1997.
Rehearing Denied January 27, 1998.
John M. Young, Sapulpa, for Appellants, Ricky Earl Combs and Sandra Faye Combs, Case Numbers 86,122 and 88,053.
H. Duane Riffe, Broken Arrow, for Appellee, Johnny Ray Sutton, Case Number 86,122 and for Appellees, Jerry Sutton and Sharon Sanders, Case Number 88,053.
Jo Stanley Glenn, Tulsa, for Appellee, Johnny Ray Sutton, Case Number 88,053.
Charles Whitman, Tulsa, for Appellee, Jennifer Sutton, Case Number 88,053.
Jeff DeFord, Sapulpa, for R.W.S., Case Number 88,053.
Melinda Johnson Ryan, Sapulpa, for Appellees, Dennis Lamecker and Dorothy Lamecker, Case Number 88,053.
*84 HARGRAVE, Justice.
¶ 1 Before us are two related cases that we dispose of today by a single opinion. In Case No. 86,122, Ricky Earl Combs and Sandra Faye Combs appeal the trial court's denial of their petition for adoption of R.W.S. based on his determination that consent of the natural father, Johnny Sutton, was required. Case No. 86,122 is submitted on appellants' brief only. In Case No. 88,053, the Combs appealed from the trial court's dismissal of their petition for guardianship of R.W.S. and granting custody of R.W.S. to the mother in the natural parents' divorce. We granted the Combs' motion to retain. We affirm the trial court in both cases.

I. ADOPTION
¶ 2 Jennifer Sutton filed for divorce from Johnny Sutton on May 27, 1994, in Creek county district court, Sapulpa Division. Judge April Sellers White ruled on an agreed temporary order on June 15, 1994 (the order was filed January 10, 1995), awarding custody of the two minor children to the mother, Jennifer Sutton, and reserving the issue of child support until Johnny Sutton was released from the Department of Corrections.
¶ 3 On February 1, 1995, the Combs' petition for adoption of R.W.S. was filed in Creek County District Court, Bristow Division, and was heard by Judge Charles Woodson. The natural mother had filed her consent to the adoption and the Combs maintained that consent of the father was not necessary under Title 10 O.S.Supp.1996 § 60.6 because of the natural father's wilful failure to support R.W.S. for one year. The natural father was incarcerated, but was represented at the March 15, 1995 hearing and objected to the adoption.
¶ 4 On March 15, 1995, Judge Woodson determined that R.W.S. was not eligible for adoption without consent of his natural father. The trial judge ruled that the order entered by Judge White in the District Court of Creek County, Sapulpa Division, on June *85 15, 1994, in the divorce case had specifically reserved the issue of child support until the father was released from the custody of the Department of Corrections. The order stated that the parties disputed whether the natural father, Johnny Ray Sutton, Sr., had provided support for the minor child during the statutory period. This order was not filed until September 27, 1995.
¶ 5 On March 27, 1995 the Combs moved for a new trial, alleging error of the court in sustaining a demurrer to petitioner's evidence, in refusing to apply the provisions of 10 O.S.Supp.1996 § 60.6, and that the decision was contrary to the weight of the evidence, among other alleged errors. The motion for new trial was overruled on April 24, 1995 and the order was filed August 14, 1995. The Combs appealed to this Court on August 31, 1995.[1]
¶ 6 The Combs argue that the trial judge erred in failing to apply Title 10 O.S.Supp. 1996 § 60.6, which provides that a child under eighteen years of age cannot be adopted without the consent of its parents, if living, except that consent is not required from:
"1. A parent whose parental rights have been terminated pursuant to the provisions of Sections 1130, 1131, or 29.1 of this title; or
2. A parent who, for a period of twelve (12) months immediately preceding the filing of a petition for adoption of a child, has willfully failed, refused, or neglected to contribute to the support of such child:
a) in substantial compliance with a support provision contained in a decree of divorce . . . or other lawful orders of support entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support, or
b) according to such parent's financial ability to contribute to such child's support if no provision for support is provided in a decree of divorce . . .
The incarceration of a parent shall not prevent termination of parental rights under this section; . . ." (emphasis added)
¶ 7 At the hearing before Judge Woodson there was testimony that the natural father had some employment as a truck driver during the two or three months before his incarceration and that he was paid a percentage of each load as compensation. There was testimony from Jerry Sutton that Johnny had the two minor children with him several times and that Johnny provided food and medicine for them, as well as some clothes for the older child. There was conflicting testimony whether Johnny had paid any money to Jennifer during that period, but it is undisputed that at least one check for $80.00 was delivered in January, 1994. Jennifer Sutton testified that she received the $80.00 check, but contended that the other witnesses were not telling the truth about the children having overnight visits with Johnny or that any clothing was ever purchased for R.W.S. Counsel for Johnny Sutton argued a demurrer to the evidence, but the trial judge apparently denied the petition rather than sustaining the demurrer, ruling that the order of the Sapulpa Division had deferred the issue of child support.
¶ 8 The Combs argue on appeal that the agreed temporary order entered in the divorce case did not relieve the natural father of his obligation to pay child support under § 60.6(2)(b), which states that if there is no provision for support in a decree of divorce, the parent must support according to such parent's financial ability, citing Matter of Adoption of J.L.H., 737 P.2d 915, 920 (Okla. 1987). They also argue that, under the statute, incarceration does not prevent termination of parental rights under the section.
¶ 9 Under the statute, adoption without consent of the parents requires that the parent must have acted wilfully in failing to contribute to the support of the child. In Matter of Adoption of R.R.R., 763 P.2d 94 (Okla.1988), we said that to avoid adoption, the parent need only show support contributions commensurate with ability, in any form, towards the child's living expenses and *86 that gifts comporting with the parent's financial ability are sufficient to discharge the duty. There was testimony before Judge Woodson that the father had provided medical and other care to the children, which the mother disputed. Judge Woodson's order noted that it was disputed whether the father had provided support during the twelve month period, but by his ruling effectively found no wilful failure to support as contemplated by the statute.
¶ 10 The standard of proof in determining a child's eligibility for adoption without parental consent is clear and convincing evidence. Matter of Adoption of Darren Todd H., 615 P.2d 287, 290 (Okla.1980). We said in that case that the issue of wilfulness is a fact question for the trial court. Judge Woodson failed to find justification under the statute for allowing adoption without consent of the natural father. Judge Woodson found that the existence of a court order deferring child support until a later time would not create a condition under the statute whereby the child could be adopted without the father's consent. We cannot find that there was clear and convincing evidence of wilful refusal to support that would reflect error on the part of the trial judge in this matter.
¶ 11 We have reviewed the record and find that the trial judge did not commit reversible error in finding that the consent of the natural father was required before R.W.S. was eligible for adoption under the circumstances of this case. The trial court's temporary order in the parties' divorce proceeding in Sapulpa had specifically ruled that any question of child support would be deferred until the father's release from custody of the Department of Corrections. We cannot find that the trial judge erred in determining that there was no wilful failure to support by the father in light of the agreed temporary order deferring the issue of child support.

II. DIVORCE/GUARDIANSHIP
¶ 12 After denial of their motion for new trial in the Bristow adoption, the Combs filed a petition for guardianship of R.W.S. on April 24, 1995 in Sapulpa.[2] The Suttons' divorce case was pending in Sapulpa. The guardianship and divorce cases became inextricably intertwined and eventually were consolidated and transferred to Judge Woodson in Bristow. A summary of the Sapulpa proceedings is detailed below.
¶ 13 As discussed in Part I, Judge April Sellers White had entered an agreed temporary order in the divorce proceeding, awarding the plaintiff, Jennifer Sutton, temporary custody of the two minor children. Supervised visitation was to be arranged for the defendant after his release from the Department of Corrections. The issue of child support was specifically reserved until the defendant's release from the custody of the Department of Corrections, as were the issues of attorney fees and costs.
¶ 14 Johnny Sutton was released in June, 1995 and filed a motion to modify custody in the divorce case on July 10, 1995, alleging that he was a fit and proper person to have the temporary and permanent care, custody and control of the minor children. The motion was set for hearing on August 30, 1995. The record does not reflect whether the motion to modify was ruled on.
¶ 15 On July 25, 1995, the attorney assigned to represent R.W.S. sought an emergency ex-parte order granting temporary custody to the Combs. The application stated that at the time of filing the petition for guardianship, no temporary order had been requested granting the petitioners temporary custody of the minor child and that the brother of R.W.S. had been removed by his mother from his protective guardians and they feared that R.W.S. was potentially in jeopardy of such removal as well. Judge April Sellers White granted the emergency temporary custody order directing that R.W.S. remain with the petitioners Combs until the matter could be set for hearing. An order dated August 30, 1995 set the application for emergency temporary custody for *87 hearing on October 16, 1995. The hearing was continued to January 25, 1996.
¶ 16 The Combs asked to intervene in the Sutton divorce case on October 3, 1995, stating that they had been awarded temporary custody of R.W.S. by order of the District Court of Creek County, Sapulpa Division, in Case PG 95-60 and that R.W.S. currently resided with them. They asserted that custody of R.W.S. should remain with them pursuant to other orders of the court, and further moved that the father's motion to modify be dismissed. The hearing was continued until January 25, 1996.
¶ 17 On January 6, 1996, Dorothy Lamecker, the maternal grandmother, and her husband Dennis, moved to substitute themselves as guardians of R.W.S. and moved to intervene in the guardianship, stating that the natural parents of R.W.S. had agreed that it was in the best interest of R.W.S. to be placed in their custody. The motion stated that the natural parents consented to the change in guardianship and withdrew their consent for the Combs to remain as guardians of the minor child. Jennifer Sutton filed a consent to appointment of the Lameckers as guardians on January 2, 1996. The hearing was continued until Friday, March 8, 1996. By court minute entered March 8, 1996, Judge Donald Thompson, after reciting that a hearing had been held in the guardianship and divorce cases, ordered Mr. Young to file an amended petition for guardianship since the mother had withdrawn her consent to the Combs' guardianship. The hearing was continued to April 5, 1996 and all previously entered orders were specifically ordered to remain in effect pending further hearing. The Combs filed an amended petition on March 13, 1996, alleging that the natural mother was estopped from withdrawing her consent to guardianship and adoption and from attempting to reclaim custody for herself or on behalf of anyone else.[3]
¶ 18 Another court minute dated June 28, 1996, filed on July 1, in the consolidated guardianship and divorce cases reflects that Judge April Sellers White overruled the Lameckers' motion to substitute guardian, ordered the Combs' amended petition, second amended petition and supplemental petition stricken and reinstated the Combs' original petition for guardianship. The Lameckers were allowed to intervene. The minute states that one witness was sworn and testimony presented. The Combs' motion to intervene in the divorce case was granted, only if they were guardians. The Court ordered the consolidated guardianship cases and divorce case transferred to Judge Woodson's docket in Bristow. This order was memorialized by journal entry filed September 13, 1996.
¶ 19 On July 29, 1996 an alternative petition for writ of habeas corpus or custody was filed by the natural mother, Jennifer Sutton, to secure the custody of R.W.S. She alleged that the child was being restrained by the petitioners Combs in violation of the temporary order issued June 15, 1994 by Judge White in the divorce proceeding. The mother stated that her consent to adoption became a nullity when the court refused to grant the adoption.
¶ 20 After a hearing on August 26, 1996, Judge Charles S. Woodson entered an order granting the Suttons' divorce, awarding custody of the minor children to the mother, subject to the father's supervised visitation, and ordering the father to pay child support. No visitation with the Combs was ordered, but the court encouraged that visitation be allowed. All pending motions and issues in any of the cases were presented to Judge Woodson at that time. The court vacated the temporary letters of guardianship, denied the original application for guardianship and ordered the guardianship dismissed. The court noted that the plaintiff had withdrawn her petition for writ of habeas corpus. The Journal Entry memorializing the judgment was not filed until November 27, 1996.
¶ 21 The Combs appealed from Judge Woodson's order, asserting error in not permitting them to amend their guardianship petition, in dismissal of their guardianship proceeding and in the failure to award them *88 custody of R.W.S. in the divorce case, among numerous other alleged errors. The points argued in their brief on appeal are focused, however, on one primary issue: that they should have been able to present evidence concerning the best interest of the child, to show that custody should have been awarded to them.
¶ 22 The determinative issue is whether the trial court erred in awarding custody to the natural mother based on the court's determination that she was a fit and proper person and parent to be awarded permanent and primary care, custody and control of the minor children. The Combs assert that the court should have taken evidence on the best interest of the child regardless of whether the natural parents had been found unfit. We find this argument to be without merit because the trial court did consider the best interest of the child in his determination.
¶ 23 The Combs' brief-in-chief argues that the Sapulpa and Bristow trial courts abused their discretion in refusing to allow appellants to amend their petition for guardianship, thereby refusing to consider evidence that appellants desired to produce on best interest of the child, in contravention of Title 10 O.S.1991 § 21.1. The Combs argue that they should have been able to show unfitness of the mother, but unfitness of the mother had never been an issue in any of the cases. They admit that the trial court's denial of the original petition for guardianship was because the circumstances upon which it was originally pleaded (incarceration of the father and consent of the mother) no longer existed. They believe that they were prevented from having any further meaningful participation in the custody proceedings because they had been allowed to intervene in the divorce case only if they were guardians. It is unclear which arguments apply to the guardianship and which arguments apply to the divorce custody matter, but in any event, we find such distinctions immaterial for the reasons set out below.
¶ 24 We find that the guardianship is moot, the court having awarded custody of the child to the natural mother in the divorce proceeding. We will treat arguments made by the petitioners Combs on all issues as being directed to the question of custody of R.W.S. The only citation of authority for appellant's Proposition I is Title 10 O.S.1991 § 21.1. Section 21.1(A) provides, in pertinent part:
"A. Custody should be awarded or a guardian appointed in the following order of preference according to the best interest of the child to:
1. a parent or to both parents jointly except as otherwise provided in subsection B . . .
2. a grandparent;
3. a person who was indicated by the wishes of a deceased parent;
4. a relative of either parent;
5. the person in whose home the child has been living in a wholesome and stable environment; or
6. any other person deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child."
¶ 25 The Lameckers, the only appellees to file a brief, argue that unless the parents are found to be unfit, the child should not be placed with a third party. The Combs argue that the best interest of the child is the paramount test and that it applies whether or not the parents are found to be unfit. In the case at bar this becomes a distinction without a difference because the trial judge specifically stated that he was considering the best interest of the child. In any event, a grandparent and a paternal aunt and uncle also sought custody of R.W.S., so it was not solely a question of whether custody should be given to the mother or to the Combs. The Lameckers and the aunt and uncle, Jerry Don Sutton and Sharon Gail Sanders, stated to Judge Woodson that they did not object to the natural mother's having custody. They merely asked that if custody were denied to the natural mother, then it be placed with them. Under the statute cited by the Combs, both the grandparents and the relatives are given preference over third parties in custody matters. Title 10 O.S.1991 § 21.1.
*89 ¶ 26 The awarding of the care and custody of a child is within the sound discretion of the trial court and this Court will not disturb the judgment on appeal unless it is clearly against the weight of the evidence. Gibson v. Dorris, 386 P.2d 186 (Okla.1963). The Combs argue that the dismissal of their guardianship kept them from being considered for custody in the divorce. The record does not reflect this to be the case. The trial judge noted that the grandmother and other relatives had sought custody and that the order of preference given by statute placed the Combs behind such relatives in consideration for custody.
¶ 27 The Lameckers argue that the best interest of the child is presumed to be with the natural parents and that in order to take away the custody of a natural parent in favor of third parties the parents must be affirmatively shown to be unfit by clear and convincing evidence, citing McDonald v. Wrigley, 870 P.2d 777 (Okla.1994); In the Matter of Application of Grover, 681 P.2d 81 (Okla. 1984); Gibson v. Dorris, 386 P.2d 186 (Okla. 1963) and Marshall v. Marshall, 555 P.2d 598 (Okla.1976). They also rely on Title 10 O.S. § 21.1, arguing that the legislature, in setting out the list of priorities for awarding custody, was taking into consideration the best interests of the child.
¶ 28 The trial judge specifically stated at the hearing that there were no allegations of unfitness of the natural mother. McDonald v. Wrigley, 870 P.2d 777 (Okla.1994), held that if a parent is not found to be unfit, then the parent is entitled to custody as against third parties who have no permanent or legal right to custody, noting that the district court may award custody to third parties if both parents are found to be unfit. (emphasis added).
¶ 29 In Haralson v. Haralson, 595 P.2d 443 (Okla.1979), we clearly stated that in order for third persons to deprive a parent of custody of his children, some inability on the part of the parent to provide for the children's ordinary comfort or intellectual or moral development must be shown; evidence of unfitness must be clear and conclusive and the necessity for depriving the parent of custody must be shown to be imperative. (emphasis added) While an appellate court may examine and weigh the evidence, the findings and decree of the trial court cannot be disturbed unless found to be against the clear weight of the evidence. Mueggenborg v. Walling, 836 P.2d 112 (Okla.1992).
¶ 30 Judge Woodson, at the August 26, 1996 hearing, ruled that when the guardianship was dismissed, the Combs were no longer intervenors in the divorce case, but he stated specifically, at page 58: "Now, that does not mean, by my ruling, that they will not be considered today in connection with the best interests of the child statute. I'm kind of leaving the door open for you, to listen to these parents and then, at some appropriate time either you or Mr. DeFord can advise the Court that you wish to be heard on the best interests of the child issue."
¶ 31 Further, Mr. Young, representing the Combs, was permitted to cross-examine the natural mother, Jennifer Sutton, and in so doing, was able to show that the mother had been employed as a topless dancer at one time and as a bartender at another time. Mr. Young's cross-examination attempted to show the mother as an unfit person to have the child. The trial court sustained objection to these attempts on the basis of improper predicate or relevance, admonishing Mr. Young for attempting to prejudice the court.
¶ 32 Mr. Young was also permitted to present a summation to the court on behalf of the Combs concerning the best interest of the child, and the attorney for the child, Mr. DeFord argued on best interest of the child that a strong bond had formed between R.W.S. and the Combs. The trial judge heard arguments from each attorney and, in conclusion, stated that he was aware that a strong bond had been established with the Combs and that the timing of a disruption of that bond was something to be carefully considered by the court. The judge stated specifically that there was no question in his mind but that the Combs had done a good job. The judge heard arguments on how a transition should be made from the Combs to the natural mother. The judge was informed about visitations that had occurred over the last six months between R.W.S. and his *90 mother, grandmother and the paternal aunt and uncle, and as to the benefit of his being reunited with his brother, Johnny.
¶ 33 A review of the record convinces us that the Combs' arguments are without merit. The transcript of the hearing before Judge Woodson reflects that the Combs' attorney was present in the courtroom and permitted to participate in the proceedings. There is no indication that the trial judge did not consider the best interests of the child in placing custody with the natural mother. Judge Woodson stated that the best interest of the child would be considered and that Mr. Young, on behalf of the Combs, and Mr. DeFord, on behalf of the child, would be heard on the best interest of the child issue. The trial court heard testimony from the natural mother about her changed circumstances and her desire to have custody of R.W.S. The mother was currently and had been employed at R.K. Distributing in Tulsa as a vice president, making $5.00 per hour plus commissions amounting to approximately $1500.00 per month. The brother of R.W.S. was now living with the mother again after having been in the care of third parties. We find nothing in the record indicating abuse of discretion or rulings contrary to the clear weight of the evidence made by the trial judge. Accordingly, we affirm the decision of the trial court. The temporary stay previously entered by this Court in Case No. 88,053 is hereby ordered dissolved.
IN CASE NO. 86,122 AND CASE NO. 88,053, THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED.
¶ 34 LAVENDER, SIMMS (by separate concurring opinion), HARGRAVE, OPALA (joins SIMMS, J.), and WATT, concur.
¶ 35 KAUGER, C.J., and SUMMERS, V.C.J., concur in part; dissent in part.
¶ 36 HODGES and ALMA WILSON (by separate dissenting opinion), JJ., dissent.
SIMMS, J., concurring:
¶ 1 I concur in affirming the trial courts' judgments in favor of the rights of the natural parents in the adoption and guardianship actions, however, I would affirm the trial court's decision in the adoption action (86,122) on a different legal basis. That is, that the petitioners, Mr. and Mrs. Combs, were not proper parties under Title 10 sections 60.6 and 60.7, to bring this action to adopt R.W.S. without the consent of his parents. This nonconsensual adoption procedure is intended to be a private remedy between parents. It provides the means for a child to be adopted by his or her stepparent with the consent of the custodial parent. The child is adopted into his or her existing family unit  the consenting natural parent and new spouse  without the consent of the other parent who has wilfully failed to meet child support obligations for one year.
¶ 2 This is not a procedure which is available to the world at large to invoke against the payor parent, however. Mr. and Mrs. Combs are strangers, legal and otherwise, to the marriage and divorce of Jennifer and Johnny Sutton and they are not the legal guardians or legal custodians of R.W.S. Therefore, they are not proper parties under § 60.7 to bring this action to adopt the legitimate child of that marriage. That section provides:
"A. Prior to a court hearing on a petition for adoption without the consent of a parent or parents, as provided for in Section 60.6 of this title, the consenting parent, legal guardian, or person having legal custody of the child to be adopted shall file an application stating the reason that the consent of the other parent or parents is not necessary. The application shall be heard by the court and an order entered thereon in which said child is determined to be eligible for adoption pursuant to the provisions of Section 60.6 of this title. . . ."
¶ 3 We recognized this "private interparental litigation" in Davis v. Davis, 708 P.2d 1102, 1112 (Okl.1985), where we addressed at length the distinctions between the remedies provided by the Juvenile Code in § 1130 for involuntary termination of the parental bond by the state which, we noted, involve public-law issues, and the purely private remedy set forth in § 60.6 for adoption without the consent of a non-paying parent. See also Matter of Adoption of R.R.R., 763 P.2d 94 (Okl.1988).
*91 ¶ 4 R.W.S. was not a child eligible for adoption and these petitioners were not eligible to adopt him under § 60.6 and § 60.7. The trial court correctly ruled in favor of the natural father.
I am authorized to state that Justice OPALA joins me in the views expressed herein.
ALMA WILSON, Justice, dissenting:
¶ 1 The majority opinion affirms the trial court in both the adoption proceeding and the divorce/guardianship proceeding. In the adoption, the Court finds that the trial court did not err in determining that Johnny Sutton's failure to support was not wilful and therefore the adoption petition of the Combs should be dismissed. In the divorce/guardianship case, the Court finds that the record indicates no abuse of discretion by the trial court in determining that the guardianship petition of the Combs should be dismissed. I would reverse and remand both cases to the trial court, and accordingly, I must respectfully dissent.
¶ 2 RWS is now four years old, and has spent the last two and one-half years with the Combs after Jennifer Sutton, his mother, sought out the Combs and asked that they adopt RWS, and left him with them in February 1995. Jennifer had placed her older son with another family. The father of the boys, Johnny Sutton, had been in prison since May 16, 1994, after his probation had been revoked.
¶ 3 The subsequent attempts of the Combs to adopt RWS or become his legal guardian, both of which efforts were initially supported by Jennifer, have now been thwarted. My examination of the record leads me to conclude that too many questions concerning the best interests of RWS, and the fitness of either parent for his custody are left unanswered.
¶ 4 The majority opinion recites the reason given by the trial court for refusing to terminate Johnny Sutton's parental rights. The trial court found that Johnny's failure to support was not wilful in light of an agreed temporary order where a different judge deferred setting child support until Johnny was out of prison. But imprisonment is not an excuse for failure to support, and neither is lack of a support order.
¶ 5 Consent of a parent for the adoption of his child is not necessary if the parent has wilfully failed, refused or neglected to contribute to the support of the child for a period of twelve months immediately preceding the filing of a petition for adoption of that child. 10 O.S.Supp.1996, § 60.60(2).[1] If there is no provision for support in a decree of divorce or an order of modification, the parent must support according to such parent's financial ability. Matter of Adoption of J.L.H., 737 P.2d 915, 920 (Okla.1987). We have previously held that divorce and judicial imposition of support obligations are not pre-requisites to adoption without parental consent under § 60.6 of title 10. Matter of Adoption of R.R.R., 763 P.2d 94, 97 (Okla. 1988).[2] Although his own witnesses revealed that Johnny Sutton received a total of $3,511.03 from February through April 1994, there is no evidence to show that he contributed a penny of this to the support of RWS.[3] In May he was sent back to prison.
¶ 6 After requiring that a parent support a child according to such parent's financial ability to contribute to such child's support if the parent is not under a court order of support, 10 O.S.Supp.1993, § 60.6(2)(b) further provides: "The incarceration of a parent shall not prevent termination of parental *92 rights under this section. . . ."[4] In Oklahoma, incarceration is no longer an excuse for failure to support, nor should it be a basis for the divorce court to delay child support orders.[5] This Court has in the past affirmed a trial court's finding that a child was eligible for adoption without the consent of her natural father, when that father was incarcerated for only a portion of the year preceding the filing of the petition for adoption. Matter of Adoption of Michelle N., 577 P.2d 68 (Okla.1978). Johnny Sutton's imprisonment for nine of the twelve months should not serve to excuse his failure to support. Because the trial court improperly decided that the agreed temporary order in the divorce case excused Johnny Sutton's failure to support, I would remand the case for a determination of whether Johnny can offer any legal cause why his failure to support should be excused.
¶ 7 Concerning the guardianship matter, the majority opinion concludes that nothing in the record indicates an abuse of discretion of the trial judge in dismissing the Combs' petition for guardianship. First the opinion states that the fitness of the mother had never been an issue in any of the cases, and then concludes that the trial court correctly excluded any evidence of the unfitness of the mother. Fitness of the mother was not an issue because when the adoption was filed, and when the guardianship was subsequently filed, the Combs had the consent of the mother, Jennifer Sutton. During the course of the guardianship, she withdrew her consent to the guardianship. By this time it was too late to withdraw her consent to the adoption. 10 O.S.1991, § 60.10(A),[6] When the Combs tried to amend their petition alleging the unfitness of Jennifer as custodian of RWS, the court refused to allow the amendment because Jennifer had not received notice along with the other parties. Then when the Combs tried to later amend and give Jennifer notice, the court ruled that the amendment had come too late. The Combs were precluded from introducing evidence that the mother and father[7] were unfit for custody of RWS. I would reverse and remand for consideration of their fitness as well as the best interest of the minor child, RWS. The best interest of the child cannot be determined if the trial court will not hear evidence of unfitness from the party who had physical custody of the minor child for a substantial period of time.
¶ 8 It should be noted in this appeal that Jennifer never filed a brief answering any of the arguments of the Combs in their two appeals. Neither did Johnny. In fact, the only party filing any brief was the Lameckers, the maternal grandmother and her husband, and that only in the guardianship case. In the past, this Court held that where no answer brief is filed, and the omission is unexcused, this Court is under no duty to search the record for some theory to sustain the trial court judgment. Sneed v. Sneed, 585 P.2d 1363, 1366 (Okl.1978). Where the brief-in-chief is reasonably supportive of the allegations of error, this Court has held that it will reverse the appealed judgment. Sneed, 585 P.2d at 1366, Cooper v. Cooper, 616 P.2d 1154, 1156 (Okla.1980). But in the case at bar, the Court has acted otherwise.
*93 ¶ 9 Custody in a third party is proper only where both parents are found to be unfit. McDonald v. Wrigley, 870 P.2d 777, 779 (Okla.1994); Haralson v. Haralson, 595 P.2d 443, 445 (Okla.1979); and State v. Lohah, 434 P.2d 928, 931 (Okla.1967). The facts and circumstances tend to present a case where the best interest of this child would be best served if the Combs were allowed to present evidence of unfitness. The guardianship case was the proper place to admit and consider evidence as to the fitness of the parents. Upon consideration of all relevant evidence, the court should determine whether the Combs' guardianship would then serve the best interest of RWS. After admission of relevant evidence and findings by the trial court on remand, this may be a proper case for continuing custody with the Combs. This evidence was erroneously precluded and no proper findings therefore made by the court.
¶ 10 The best interest of the child test, now the law, has not been considered by either this Court or the trial courts. The trial courts' orders should be reversed and remanded for consideration by the trial judge of proffered evidence necessary to make this adjudication. For these reasons, I dissent.
NOTES
[1] Almost a year later, on July 10, 1996, the natural mother filed a motion to vacate and withdraw her consent to the adoption, over the objection of the petitioners. The trial judge ruled that because of the pending appeal, he had no jurisdiction to enter an order regarding the motion.
[2] On April 24, 1995, Jerry Don Sutton and Sharon Gail Sanders sought appointment as guardians of R.W.S. in a proceeding filed in Wagoner county. That action was transferred to Sapulpa and consolidated with the guardianship and divorce actions.
[3] On March 8, 1996, Judge April Sellers White entered a minute order, filed March 13, setting up the deposition of Jennifer Sutton and ordering all previously entered orders to remain in effect pending further hearing.
[1] 1993 Okla.Sess.Laws, ch. 253, § 2, eff. May 26, 1993.
[2] The special concurring opinion is a reiteration of the dissenting opinion in R.R.R.
[3] Marilyn Sutton, who is married to George Sutton, another uncle of Johnny, testified concerning whether Johnny had paid any money to Jennifer during the one-year period preceding the filing of the petition for adoption. She originally contended that she had delivered pay checks from Johnny to Jennifer for child support, but when pressed, could show only one receipt, dated January 17, 1994, for $80.00. That is before the one-year period began, February 1, 1994. She admitted that her testimony was in error, and that she had not delivered any money on behalf of Johnny to Jennifer during the months of February 1994 to the date the petition for adoption was filed in February 1995.
[4] While "termination of parental rights" is not before this court, the legislature has used this term clearly in reference to the statute providing for adoption without the consent of a nonsupporting parent. A finding that the parent's consent is unnecessary opens the door for termination of parental rights and adoption. The statute provides: "The incarceration of a parent shall not prevent termination of parental rights under this section." (Emphasis provided.) Accordingly, the sentence must be understood as applying to 10 O.S.Supp.1996, § 60.6, 1993 Okla.Sess.Laws, ch. 253, § 2.
[5] A child's need for support is not deferred because one of its parents is incarcerated. Protection of the child requires entry of enforceable support orders.
[6] Title 10 O.S.1991, § 60.10(A) provides: "Withdrawal of any consent for adoption of a child pursuant to Section 60.5 of this title shall not be permitted, except that the court pursuant to the provisions of this section may, if it finds that the best interest of the child will be furthered thereby, issue a written order permitting the withdrawal of such consent if a petition for leave to withdraw consent is submitted in writing not later than thirty (30) days after consent was executed."
[7] The Combs included a criminal information charging him with certain violent acts, which information was not admitted. But the trial court required that visitation of the father with his two sons be monitored.