727 P.2d 1057 (1986)
In the Matter of L.A.M., A Minor Under the Age of Eighteen (18) Years.
No. S-1205.
Supreme Court of Alaska.
November 14, 1986.
*1058 Philip J. McCarthy, Jr., Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for appellant.
Sidney D. Watson, Alaska Legal Services, Dillingham, Guardian Ad Litem.
Elizabeth Page Kennedy, Asst. Atty. Gen., Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.
Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION
MOORE, Justice.
S.M. appeals from a superior court order terminating her parental rights to her daughter, L.A.M. Because we conclude that S.M. did not receive proper notice of the termination proceeding, as required by the Indian Child Welfare Act, we reverse the termination order.

I. FACTS AND PROCEDURAL BACKGROUND
L.A.M., who is an Indian child within the meaning of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-1963 (1982),[1] was born in February 1984 to S.M. and T.M. In April the Department of Health and Social Services (DHSS) received reports of possible child abuse by the infant's father and filed a Petition for Adjudication of a Child in Need of Aid, pursuant to AS 47.10.010(a)(2).
The trial court appointed Alaska Legal Services as guardian ad litem for L.A.M. and the Public Defender Agency to represent the parents. During a probable cause hearing, medical testimony established that L.A.M. had been hospitalized for undernourishment and had a fracture of the right arm which appeared to have been caused by a twisting motion. The court ordered L.A.M. committed to DHSS custody for temporary placement. The child was placed with her maternal grandparents and has lived with them in Aleknagik since her release from the hospital.
While L.A.M. was hospitalized, her parents moved to Anchorage and subsequently moved outside the state. In December 1984 the State filed an amended Petition for Adjudication of a Child in Need of Aid and for Termination of Parental Rights. The petition alleged physical abuse of L.A.M. by the father, inadequate nourishment and abandonment by both parents. After the Attorney General's office filed an *1059 affidavit of diligent inquiry stating that efforts to locate the parents had failed, the trial court granted the State's motion to serve the parents with the amended petition by publication. The parents were believed to be living in Daytona Beach, Florida, so the State published notice in a Daytona Beach newspaper.[2]
An adjudication hearing was held in February 1985, at which time the trial court found L.A.M. to be a child in need of aid and scheduled a parental rights termination trial for April. Notice to the parents again was provided by publication, but this time through a newspaper in Bellingham, Washington, where S.M. and T.M. then were reported to be living. The parents did not attend either the adjudication or termination hearings. The public defender represented them jointly at both proceedings.[3]
Following two days of testimony in April and oral arguments in July, Superior Court Judge Hanson entered an order terminating the parental rights of both S.M. and T.M. The mother appeals.

II. DISCUSSION
S.M. urges reversal of the termination order, arguing that 1) she did not receive proper notice of the termination proceeding, 2) she was denied effective assistance of counsel, and 3) there was insufficient evidence to support the termination of her parental rights. The guardian ad litem supports the mother's position. Because our holding on the notice issue is dispositive of S.M.'s appeal, we do not address her other claims.
S.M. asserts that the State, by merely publishing notice of the parental rights termination proceeding, failed to comply with the notice requirements of the ICWA, 25 U.S.C. § 1912(a), and AS 47.10.030(a) and (b).
The State argues that we should not consider this issue because it was not raised at any stage of the trial court proceedings nor specified in S.M.'s statement of points on appeal. Unless it constitutes plain error, we ordinarily will not consider a claim of error if it was not both argued in the trial court and properly raised on appeal. Vest v. First National Bank of Fairbanks, 659 P.2d 1233, 1234 n. 2 (Alaska 1983), citing Burford v. State, 515 P.2d 382, 383 (Alaska 1973). In order for this court to find plain error, the error must affect substantive rights and be obviously prejudicial. Burford, 515 P.2d at 383. As we stated in Miller v. Sears, 636 P.2d 1183, 1189 (Alaska 1981), "[p]lain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted."
This is such a case. The due process right to proper notice in a parental rights termination proceeding is so fundamental that justice requires us to consider S.M.'s claim of defective notice. Furthermore, the ICWA specifically authorizes a parent to "petition any court of competent jurisdiction to invalidate [a termination of parental rights] upon a showing that such action violated" certain ICWA provisions, including the act's notice requirements. 25 U.S.C. § 1914.[4] The guardian ad litem relies on this provision to argue that S.M. has a right under federal law to be heard on the defective notice issue even though it was not raised below.
*1060 While there is little case law construing § 1914, the guardian ad litem's interpretation is consistent with the intent of ICWA to promote the stability of Indian tribes and families, see 25 U.S.C. §§ 1901-02, and is supported by the legislative history of § 1914. See H.R.Rep. No. 1386, 95th Cong., 2d Sess. 23, reprinted in 1978 U.S.Code Cong. & Ad.News 7530, 7546 (§ 1914 authorizes a parent "to move to set aside any ... termination of parental rights on the grounds that the rights secured under sections [1911, 1912, or 1913] were violated"). This interpretation of § 1914 also follows the rule that statutes enacted for the benefit of Indians must be liberally construed with all doubts resolved in favor of the Indians. Preston v. Heckler, 734 F.2d 1359, 1369 (9th Cir.1984).
We turn now to the merits of S.M.'s claim. The record establishes that notice to S.M. regarding the April 1985 termination of parental rights hearing was by publication, rather than by personal service or registered mail. We conclude this was a clear violation of the ICWA notice requirements.
The ICWA requires that notice of any termination of parental rights proceeding be provided to the parents by registered mail with return receipt requested. 25 U.S.C. § 1912(a).[5] If the identity or location of the parent and the Indian child's tribe cannot be determined, notice must be provided to the Secretary of the Interior in the same manner. Id. The notice requirements of § 1912 are mandatory and the section further provides that no termination of parental rights proceeding may be held until at least ten days after the parent has received notice by registered mail, or, if the parent cannot be found, the Secretary of the Interior has been notified.[6]See D.E.D. v. State, 704 P.2d 774, 779 (Alaska 1985).
Here, the record indicates that the State made no attempt to send notice of the April parental rights termination hearing to S.M. by registered mail, despite knowledge that S.M. was in contact with a tribal caseworker in Washington. A DHSS social worker, Kathleen Stout, testified that on February 11 she was contacted by a caseworker of the Lummi Tribal Reservation in Bellingham, Washington. The caseworker told Stout that S.M. and T.M. had asked her to contact DHSS to request financial assistance so they could return to Alaska. Although Stout asked the caseworker to tell the parents she would like to talk with them, the record does not indicate that the State sought to obtain a mailing address from the Lummi caseworker. Furthermore, the State made no attempt to send registered notice to the parents in care of the Lummi Tribal office.
Since the State failed to satisfy ICWA's requirement of notice by registered *1061 mail, the order terminating S.M.'s parental rights must be reversed  unless the procedural violation was harmless because the mother had actual notice of the termination hearing. The record fails to establish that S.M. had actual notice.
Stout testified that when she talked to the Lummi caseworker on February 11 about the parents' request for financial assistance she told the caseworker "that there was a court hearing in February." Stout's testimony does not indicate whether she was referring to the February adjudication hearing or the scheduled April termination hearing, or whether she so specified to the Lummi representative. In any event, there is no evidence that the caseworker ever told S.M. of the termination hearing.
The record also includes testimony given during the February adjudication hearing by S.M.'s father, stating that he had talked recently by telephone to S.M.'s husband. When asked if he told the husband about the adjudication hearing, S.M.'s father replied that "I told him about court." His testimony does not indicate whether he gave further details to S.M.'s husband. Moreover, he could not have provided specific information about the termination hearing because it had not been scheduled yet.
On the basis of the record before us, we cannot conclude that S.M. had actual notice of the termination hearing so as to render harmless the violation of ICWA notice requirements.
Although the violation of ICWA requirements alone is a sufficient ground for vacating the superior court's order terminating S.M.'s parental rights, we also note that the State failed to satisfy state law notice requirements. Alaska Statute 47.10.030(b) requires that a parent "shall be given notice adequate to give actual notice of the proceedings and the possibility of termination of parental rights... ." (Emphasis added). The statute further provides that "[n]otice shall be given in the manner appropriate under rules of civil procedure for the service of process in a civil action under Alaska law or in any manner the court by order directs." Here, the trial court during the adjudication hearing orally directed the State to notify the parents of the termination hearing by both publication and mail. The court's subsequent written order adjudicating L.A.M. a child in need of aid required only that the State serve notice by publication. However, notice solely by publication is not "adequate to give actual notice," as required by AS 47.10.030(b).
Children's Rule 10(g) provides that when the State files an affidavit of due and diligent inquiry stating that personal service cannot be made, the court may authorize notice by publication supplemented by registered or certified mail. The notice must be mailed to the parent's last known residence or place where the parent receives mail "unless it shall appear by affidavit that such residence or place is unknown and cannot be ascertained after inquiry." Alaska R. Children's P. 10(g) (emphasis added). Since the State knew that S.M. was in contact with a Washington tribal caseworker, we are not convinced that a mailing address could not be ascertained after inquiry.
Because the notice requirements of the ICWA were not satisfied in this case, and because the record does not establish that S.M. had actual notice so as to render that error harmless, S.M. is entitled to a new trial after receipt of proper notice.
The superior court order terminating S.M.'s parental rights is VACATED and the case REMANDED.
NOTES
[1] See specifically 25 U.S.C. § 1903(4).
[2] The State also sent notice of the proceeding to the Village of Aleknagik, L.A.M.'s Indian tribe, in accordance with ICWA requirements. See 25 U.S.C. § 1912(a).
[3] The trial court initially denied a motion by the public defender for appointment of separate counsel to represent the parents to avoid a conflict of interest. After the evidentiary portion of the termination trial, but before closing arguments were presented, the court appointed the Office of Public Advocacy as separate counsel for the mother.
[4] 25 U.S.C. § 1914 provides:

Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.
[5] 25 U.S.C. § 1912(a) provides:

In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.
(Emphasis in original).
[6] In addition to the statutory mandate that notice be by registered mail, the Department of the Interior's Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584, 67588 (1979), recommend that such notice advise the parent of certain rights protected under the ICWA, including the right to appointed counsel, the right to a continuance and the right to petition for transfer to tribal court. While these recommendations are not binding, see 44 Fed.Reg. 67584, we look to them for guidance. D.E.D. v. State, 704 P.2d 774, 779 n. 8 (Alaska 1985).